Cesar ANDRADE, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–05–01227–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 29, 2007.

Rehearing Overruled Feb. 7, 2008.

R. Scott Shearer, Houston, for appellant.

Carol M. Cameron, Houston, for appellee.

Panel consists of Justices ANDERSON, FOWLER, and FROST.

## MAJORITY OPINION

JOHN S. ANDERSON, Justice.

A jury found appellant, Cesar Andrade, guilty of murder. Tex. Penal Code Ann. § 19.02 (Vernon 2003). The jury assessed appellant's punishment at fifty-five years' confinement in the Institutional Division of the Texas Department of Criminal Justice and a $10,000.00 fine. The trial court sentenced appellant accordingly. Finding no reversible error, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant, accompanied by his girlfriend, was driving a white Nissan pickup truck when it collided with a gray Ford Tempo driven by Margarito Alberto Resendez, the nineteen year-old complainant. Appellant lowered his window, reached under his seat and removed a small, silver or chrome revolver, and fired approximately five shots at the complainant. Appellant then drove off and continued to his girlfriend's apartment. The complainant died as a result of gunshot wounds to his chest and posterior right upper arm through the chest. Upon learning the police were investigating the murder, appellant fled the country to El Salvador. Appellant had returned to Houston by 2000, but later moved to California where he was arrested and convicted on other charges. Following his conviction for attempted murder in California, appellant was brought back to Texas for trial.

During the entirety of his trial, appellant was represented by his counsel of record, Abraham Fisch. During the punishment phase of the trial, an additional attorney, R. Scott Shearer, appeared to assist Mr. Fisch. While questioning a witness, Mr. Shearer asked the court to allow him to make an offer of proof on testimony the trial court had excluded in response to an objection made by the prosecution. The trial court denied that request. Mr. Shearer then passed the witness and the prosecution also passed the witness. The trial court then excused the witness. At that point, Mr. Shearer again asked the court to make an offer of proof, which the court denied and instructed Mr. Shearer to sit down. When Mr. Shearer objected once again to the trial court's refusal to allow him to make an offer of proof, the trial court ordered him ejected from the courtroom for violating the court's rule against arguing with the court. This entire episode occurred in the presence of the jury. Mr. Fisch was present for the entire punishment phase of appellant's trial.

The jury found appellant guilty of murder and he was sentenced to fifty-five years' confinement in the Institutional Division of the Texas Department of Criminal Justice and was fined $10,000.00. This appeal followed.

### DISCUSSION

Appellant raises six issues in this appeal. In his first issue, appellant asserts the trial court's ejection, during the punishment phase of the trial, of one of his attorneys,

violated his right to counsel under both the United States and Texas constitutions. In his second issue, appellant contends the trial court's ejection, during the punishment phase of the trial, of one of his attorneys, violated his right to a public trial under both the United States and Texas constitutions. In his third issue, appellant argues the trial court committed reversible error when it allegedly prevented appellant from making offers of proof during trial. In his fourth issue, appellant contends the trial court erred when it admitted into evidence a photograph of appellant holding two handguns. In his fifth issue, appellant contends the trial court erred when it overruled his objections to allegedly improper jury argument by the prosecution. Finally, in his sixth issue, appellant contends the trial court erred when it admitted into evidence, during the punishment phase of the trial, two handguns found in appellant's possession during the early stages of the investigation of complainant's murder. We address each issue in turn.

## A. The Trial Court Did Not Violate Appellant's Right to Retained Counsel of His Choice When It Ordered One of Appellant's Attorneys Forcibly Removed From the Courtroom

 In his first issue, appellant contends the trial court denied appellant his right to counsel of his choice in violation of the Sixth Amendment to the United States Constitution and Article I, Section 10, of the Texas Constitution when it ejected one of appellant's attorneys from the courtroom.[1] We disagree.

 Initially, we must determine whether the trial court's ejection of one of appellant's attorneys, deprived appellant of his attorney of choice. The right to select counsel of one's choice is considered the core meaning of the Sixth Amendment's guarantee of the right to counsel. *United States v. Gonzalez–Lopez*, 548 U.S. 140, 126 S.Ct. 2557, 2563, 165 L.Ed.2d 409 (2006). A trial court's erroneous deprivation of this right is structural error and not subject to harmless-error analysis. *Id.*, 548 U.S. 140, 126 S.Ct. at 2564, 2566. The error requires automatic reversal on appeal. *Id.*

Here, the trial court initially appointed Patricia Segura as counsel to represent appellant during the trial.[2] Soon thereafter, appellant filed a motion to substitute Mr. Fisch as his attorney of record. The trial court granted appellant's motion and Mr. Fisch replaced Ms. Segura as appellant's attorney of record. Appellant filed no further motions to substitute counsel. In addition, appellant did not bring any complaints regarding Mr. Fisch's performance as his attorney of record to the attention of the trial court.[3] The appellate record establishes that Mr. Fisch remained appellant's attorney of record throughout

1. Because appellant has not provided any explanation or authority for construing the Texas Constitution as conferring greater protection in this area of the law than the federal constitution, we will not address his state constitutional argument. *See Black v. State*, 26 S.W.3d 895, 896 n. 4 (Tex.Crim.App.2000). In addition, we have not been asked in this issue to evaluate the propriety of the trial court ejecting Mr. Shearer from the courtroom except to the extent such action may have violated appellant's constitutional right to counsel of his choice.

2. While there was an order appointing trial counsel for appellant entered by the trial court, there is no "Affidavit of Indigency" or other evidence in the appellate record establishing that appellant was indeed indigent and financially unable to employ counsel.

3. Appellant has also not brought an issue in this appeal alleging that Mr. Fisch was ineffective.

the entire trial and was present for the entirety of appellant's trial. On the sixth and final day of appellant's trial, the punishment phase, Mr. Shearer appeared in the trial court. Mr. Shearer had been retained by appellant as his appellate counsel and to assist Mr. Fisch during the trial. The trial court granted Mr. Shearer permission to assist Mr. Fisch. As detailed above, it was at the end of Mr. Shearer's questioning of a witness early in the punishment phase, that he was ejected from the courtroom by the trial court. After Mr. Shearer was ejected, Mr. Fisch handled the remainder of the trial. Mr. Shearer argued appellant's motion for new trial and is appellant's attorney of record in this appeal.

■ The trial court did not violate appellant's Sixth Amendment right to retained counsel of his choice. Under the Sixth Amendment, a criminal defendant can retain multiple attorneys based on the attorney's specialized skills. *See Kozacki v. Knize,* 883 S.W.2d 760, 763 (Tex.App.-Waco 1994, (original proceeding)) (recognizing constitutionally protected right of a criminal defendant to retain specialized counsel of their choice to handle a particular portion of a criminal proceeding). Here, appellant exercised that right and retained two separate attorneys, one for trial and one for appeal. As stated above, Mr. Fisch, appellant's counsel of choice for trial, was present throughout his entire trial. Therefore, the trial court did not deprive appellant of his counsel of choice under the Sixth Amendment.[4] We overrule appellant's first issue.

## B. The Trial Court Did Not Violate Appellant's Right to A Public Trial When It Ordered One of Appellant's Attorneys Forcibly Removed From the Courtroom

■ In his second issue, appellant asserts he was denied the right to a public trial guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 10, of the Texas Constitution when the trial court ejected one of appellant's attorneys from the courtroom.[5]

■ Public trials have played an important role in the administration of justice in this country and have their roots in our English common law heritage. *In re Oliver,* 333 U.S. 257, 266, 68 S.Ct. 499, 504, 92 L.Ed. 682 (1948). The value of the openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed. *Press–Enterprise Co. v. Superior Court of California,* 464 U.S. 501, 508, 104 S.Ct. 819, 823, 78 L.Ed.2d 629 (1984). The sure

4. To the extent appellant's first issue can be construed as arguing the trial court erred when it did not give a limiting instruction that the trial court's ejection of Mr. Shearer should not be held against appellant, that issue was not preserved for appellate review as appellant failed to make a request for such an instruction at that time. Tex.R.App. P. 33.1.

5. Because there is no significant textual difference in the language guaranteeing the right to a public trial in the Sixth Amendment to the United States Constitution and Article 1, section 10 of the Texas Constitution, we will not construe the Texas Constitution as conferring any greater protection to a criminal defendant than the federal constitution. *See Fletcher v. State,* No. 14–96–01158–CR, 1998 WL 651616, at *2 (Tex.App.-Houston [14th Dist.] Sept. 24, 1998, pet. ref'd) (not designated for publication) (stating Texas follows the United States Supreme Court and the federal courts of appeal concerning a criminal defendant's right to a public trial). Accordingly, we will not separately address appellant's state constitutional claims. In addition, we have not been asked in this issue to evaluate the propriety of the trial court ejecting Mr. Shearer from the courtroom except to the extent such action may have violated appellant's constitutional right to a public trial.

knowledge that anyone is free to attend gives assurance that established procedures are being followed and that deviations will become known. *Id.* The requirement of a public trial is for the benefit of the accused. *Waller v. Georgia,* 467 U.S. 39, 46, 104 S.Ct. 2210, 2215, 81 L.Ed.2d 31 (1984). The public is able to see that the accused is fairly dealt with and not unjustly condemned. *Id.* The presence of spectators also ensures the accused's triers are aware of their responsibility and its importance. *Id.* A public trial also ensures that the judge and prosecutor carry out their duties responsibly and it encourages witnesses to come forward and discourages perjury. *Id.* The right to a public trial is not absolute however. *Addy v. State,* 849 S.W.2d 425, 429 (Tex.App.-Houston [1st Dist.] 1993, no writ). The right to a public trial must be balanced against other interests essential to the administration of justice. *United States v. Osborne,* 68 F.3d 94, 98 (5th Cir.1995).

■ The barring of some members of the public from the courtroom does not necessarily mean that an accused has been denied a public trial. *Hernandez v. State,* 914 S.W.2d 218, 221 (Tex.App.-El Paso 1996, pet. ref'd). In the case at bar, the trial court did not totally close the courtroom to all spectators, instead, it ordered the removal of a single person, one of appellant's attorneys, for violating a standing procedural order by arguing with the trial court. This fact distinguishes this case from the authority cited by appellant. For example, in *Waller v. Georgia,* the leading case cited by appellant, the Supreme Court addressed a total closure of a courtroom when it adopted the following test for determining when a defendant's right to a public trial is outweighed by other considerations: (1) a party seeking to close a court proceeding must advance an overriding interest that is likely to be prejudiced; (2) the closure must be no broader than necessary to protect that interest; (3) the trial court must consider reasonable alternatives to closing the proceeding; and (4) it must make findings adequate to support the closure. *Waller,* 467 U.S. at 45, 104 S.Ct. at 2215. In *Osborne,* the Fifth Circuit addressed a similar situation to the case at bar when it distinguished *Waller,* found it applied only to total closures, and adopted a modified version of the *Waller* factors for cases involving only a partial closure of a courtroom. *Osborne,* 68 F.3d at 98–99. The Fifth Circuit determined that there must only be a "substantial reason" for the partial closure. *Id.*

■ Here, the trial court ejected Mr. Shearer when he continued to argue with the trial court in violation of the trial court's standing procedural orders. Appellant has cited no authority holding that such an ejection of a party's attorney equates to a partial closing of a courtroom to the public. Assuming without deciding that is the case, we find that a trial court's authority to keep order in the courtroom is a "substantial reason" justifying the partial closure. *See United States ex. rel. Orlando v. Fay,* 350 F.2d 967, 971 (2nd Cir.1965) (holding the guarantee of a public trial means only that the public must be freely admitted so long as those persons and groups who make up the public remain silent and behave in an orderly fashion so that the trial may continue). As the trial court did not violate appellant's constitutional right to a public trial, we overrule appellant's second issue.

## C. The Trial Court's Handling of Appellant's Requests to Make Offers of Proof Was Harmless Error

In his third issue, appellant contends the trial court committed reversible error when it repeatedly denied appellant the

opportunity to make offers of proof prior to the charge being read to the jury during the guilt/innocence phase of appellant's trial.[6] We disagree that the trial court committed reversible error.

Texas Rule of Evidence 103(b) provides that an "offering party shall, as soon as practicable, but before the court's charge is read to the jury, be allowed to make, in the absence of the jury, its offer of proof." Tex.R. Evid. 103(b). The right to make an offer of proof is absolute; a trial court does not have discretion to deny a request to perfect a bill of exception. *Kipp v. State,* 876 S.W.2d 330, 333 (Tex. Crim.App.1994). Normally, the remedy for such an error is not, as appellant contends, a new trial, but to abate the appeal to permit counsel to develop the appellate record. *Spence v. State,* 758 S.W.2d 597, 599–600 (Tex.Crim.App.1988). The failure to allow a bill of exception or an offer of proof is subject to a harm analysis. *Williams v. State,* 964 S.W.2d 747, 753 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd).

The evidence is undisputed that the trial court denied appellant the opportunity, despite numerous requests, to make an offer of proof regarding the excluded testimony of Robert Baldwin, a ballistics expert with the Houston Police Department Crime Lab, prior to the charge being read to the jury during the guilt/innocence phase of the trial. It is also undisputed that the trial court ultimately allowed appellant the opportunity to make an offer of proof on Baldwin's excluded testimony prior to the charge being read to the jury during the punishment phase of the trial. Accordingly, while the trial court erred when it prevented appellant from making an offer of proof prior to the

charge being read to the jury during the guilt/innocence phase of his trial, the error was harmless because appellant was ultimately allowed to make his offer of proof. *Id.*

Another witness in the trial was Officer Glen Riddle, the crime scene investigator for the Resendez murder investigation. During appellant's cross-examination of Officer Riddle, the trial court sustained the State's objection to appellant's question about problems in the Houston Police Department Crime Lab's operations. The trial court then permitted appellant to start making an offer of proof regarding Officer Riddle's excluded testimony but soon thereafter stopped the offer, stating appellant would be allowed to finish making his offer of proof at the end of the trial. Appellant did not object to the trial court stopping his offer of proof. In addition, appellant did not seek to resume his offer at any later point during the trial. Because appellant did not object to the trial court's handling of the Officer Riddle offer of proof, he has failed to preserve that issue for appellate review. *See* Tex.R.App. P. 33.1(a); *Nino v. State,* 223 S.W.3d 749, 755 (Tex.App.-Houston [14th Dist.] 2007, no pet.).

Appellant also contends the trial court denied him the opportunity to make an offer of proof regarding the excluded testimony of Xavier Avila, the detective investigating the murder. Appellant properly objected to the trial court's action prohibiting the making of an offer of proof regarding Detective Avila's excluded testimony. As appellant had an absolute right to make an offer of proof regarding the excluded testimony of Detective Avila, the trial court erred when it prohibited appellant from making his offer. *Kipp,* 876

---

6. Appellant has not raised any issue challenging the trial court's exclusion of any of the

testimony at issue in appellant's offers of proof.

S.W.2d at 333. However, as appellant has not raised an issue in this appeal arguing the trial court erred in excluding Detective Avila's testimony, an abatement to permit counsel to develop the appellate record would serve no purpose as it would not result in the development of any information relevant to this appeal. *See Rivera v. State*, 981 S.W.2d 336, 341 (Tex.App.-Houston [14th Dist.] 1998, no pet.) (the court of appeals (1) held that the trial court's refusal to allow an offer of proof was harmless error because the defendant had not raised an issue on appeal regarding the excluded testimony thus making an abatement futile; and (2) refused to allow the defendant to raise new issues on appeal through supplemental briefing). Therefore, the error is harmless. We overrule appellant's third issue.[7]

### D. The Trial Court Did Not Abuse Its Discretion When it Admitted Into Evidence a Photograph of Appellant Holding Two Handguns

In his fourth issue, appellant contends the trial court erred when it admitted a photograph, State's Exhibit 41, showing appellant holding two handguns, one of which was identified as the murder weapon, because (1) the photograph was not relevant; (2) the probative value was substantially outweighed by its prejudicial effect; and (3) the admission of the photo-graph denied appellant the presumption of innocence.

### 1. The Standard of Review

■■■■ Evidence is relevant if it has any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence. Tex.R. Evid. 401. The admission of relevant evidence is largely left to the discretion of the trial court. *Moreno v. State*, 858 S.W.2d 453, 463 (Tex.Crim.App.1993). Absent an abuse of discretion, the trial court's decision will not be reversed on appeal. *Id.* Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Tex.R. Evid. 403. Therefore, upon further objection from the opponent of the evidence based on Rule 403, the trial court must weigh the probativeness of the evidence against the potential for unfair prejudice. *Montgomery*, 810 S.W.2d at 389. In keeping with the presumption of admissibility of relevant evidence, there is a presumption that relevant evidence is more probative than prejudicial. *Santellan v. State*, 939 S.W.2d 155, 169 (Tex.Crim.App.1997). The trial court's ruling whether to exclude evidence under Rule 403 is also measured by an abuse of discretion standard and will not be reversed if the ruling is within the zone of reasonable disagreement.[8] *Montgomery*, 810 S.W.2d at 391.

---

7. The dissent contends we overlooked Maria Resendez in our handling of appellant's third issue. However, appellant's third issue on appeal was "[d]id the trial court err by repeatedly refusing to allow appellant to make offers of proof during the trial?" As appellant was allowed to make an offer of proof regarding the excluded testimony of Ms. Resendez, a witness during the punishment phase of the trial, before the charge was read to the jury during the punishment phase of the trial, she does not fall within the purview of appellant's third issue and need not be addressed.

8. Citing to *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex.Crim.App.1990), the State argues the trial court, when conducting a Rule 403 analysis balancing the probativeness of evidence against its prejudicial effect, has a "limited right to be wrong" when deciding the admissibility of evidence. However, in its opinion on rehearing, the Court of Criminal Appeals clarified that statement's meaning when it held that "[t]he trial court has no 'right' to be 'wrong' if that means to admit evidence which appears to the appellate court, affording all due deference to the trial

## 2. The Photograph Was Relevant

 The State had the burden to prove appellant caused complainant's death by shooting him with a deadly weapon. Dwayne Wolf, Deputy Chief, Harris County Medical Examiner's Office, testified State's Exhibit 55 was recovered from complainant's rib. Robert Baldwin, the ballistics expert from the Houston Police Department Firearms Laboratory, testified State's Exhibit 55 was a bullet, either a .38 special or a .357 magnum cartridge. Baldwin also testified that the most common type of firearm that would fire State's Exhibit 55 would be a revolver. Finally, Baldwin testified that he could not testify that the bullet had definitely been fired from a revolver or semi-automatic handgun. Appellant's girlfriend testified she witnessed appellant commit the murder with a small revolver. She went on to testify that State's Exhibit 41 is a photograph of appellant holding the same silver or chrome revolver he used to commit the murder. Detective Avila testified that State's Exhibit 41 depicts what appears to be a short-barrel, hammerless revolver, probably a .38. State's Exhibit 41, a photograph of appellant holding the murder weapon, has a tendency to make the existence of a fact of consequence to the determination of the action, i.e. the person who committed the murder, more probable than it would be without the evidence. Therefore, State's Exhibit 41 was relevant and the trial court did not abuse its discretion in admitting it into evidence.

## 3. The Probative Value of the Photograph is Not Substantially Outweighed by the Danger of Unfair Prejudice

 In addition, the probative value of State's Exhibit 41 was not substantially outweighed by the danger of unfair

prejudice, confusion of the issues, or misleading the jury. Relevant evidence may still be excluded by the trial court under Rule 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex.R. Evid. 403. When a trial court balances the probative value of the evidence against the danger of unfair prejudice, a presumption exists that favors the evidence's probative value. *Feldman v. State*, 71 S.W.3d 738, 754–55 (Tex.Crim.App.2002). The relevant criteria for determining whether the prejudice of admitting the evidence substantially outweighs the probative value include the following: (1) the probative value of the evidence; (2) the potential the evidence has to impress the jury in an irrational but nevertheless indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence to prove a fact of consequence. *State v. Mechler*, 153 S.W.3d 435, 440 (Tex.Crim.App. 2005). If the record reveals one or more of these considerations led to a risk that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice, then an appellate court should conclude the trial court abused its discretion in admitting the evidence. *See Reese v. State*, 33 S.W.3d 238, 241 (Tex. Crim.App.2000).

We start with an examination of the probative value of the evidence. A photograph of the appellant in possession of the same handgun used to commit the murder is highly probative of appellant having committed the murder. Next, we examine whether the evidence has the potential to impress the jury in an irrational but nevertheless indelible way. Rule 403 does not

court's decision, nevertheless to be substantially more prejudicial than probative."

*Montgomery v. State*, 810 S.W.2d 372, 393 (Tex.Crim.App.1990).

exclude all prejudicial evidence; if it did, all of the State's evidence would be excluded as that is the purpose behind all of the State's evidence. Instead, Rule 403 focuses only on the danger of unfair prejudice and the tendency to tempt the jury into finding guilt on grounds apart from proof of the offense charged. *Mechler*, 153 S.W.3d at 440. While the photograph was certainly prejudicial to appellant, it relates directly to the charged offense of murder. We find that the photograph does not have a great potential to impress the jury in an irrational way and would not tempt the jury into a finding of guilt on improper grounds.

The third criteria used to determine whether the prejudice of admitting the evidence substantially outweighs the probative value is the amount of time needed to develop the contested evidence, during which the jury will be distracted from the indicted offense. *Id.* at 441. The time involved in the introduction of the photograph was minimal, and was thus unlikely to distract the jury from considering the charged offense. We find that this factor does not weigh against admitting the evidence.

The fourth and final factor used to determine whether the prejudice in admitting the photograph substantially outweighs the probative value focuses on the proponent's need for the evidence to prove a fact of consequence. This factor encompasses whether the proponent has other evidence establishing this fact and whether this fact is related to a disputed issue. *Id.* The photograph was certainly related to a disputed issue: the identity of the murderer. The State also demonstrated a need for the evidence: to connect appellant with the murder weapon. Evaluating the above four factors and balancing the prejudicial nature of the photograph against its probative value, we conclude the probative value

of the photograph is not substantially outweighed by its prejudicial effect. Accordingly, the trial court did not abuse its discretion in admitting State's Exhibit 41.

### 4. The Admission of State's Exhibit 41 Did Not Deny Appellant the Presumption of Innocence

Under the Due Process Clause of the Fourteenth Amendment, an accused in state court has the right to the presumption of innocence, i.e., the right to be free from criminal conviction unless the prosecution can prove the defendant's guilt beyond a reasonable doubt by probative evidence adduced at trial. *Miles v. State,* 204 S.W.3d 822, 825 (Tex.Crim.App.2006), *cert. denied,* —— U.S. ——, 127 S.Ct. 1496, 167 L.Ed.2d 230 (2007). Ordinary rules of evidence, by simply permitting evidence to be admitted at trial, do not subvert the presumption of innocence because they do not concern whether the admissible evidence is sufficient to overcome the presumption of innocence. *Carmell v. Texas,* 529 U.S. 513, 533, 120 S.Ct. 1620, 1633 n. 23, 146 L.Ed.2d 577 (2000). As discussed above, State's Exhibit 41 was properly admitted into evidence pursuant to the Texas Rules of Evidence; the admission of such evidence therefore did not deny appellant the presumption of innocence.

Having addressed and rejected each argument raised under appellant's fourth issue, we overrule appellant's fourth issue on appeal.

### E. The State Did Not Engage in Improper Jury Argument During the Punishment Phase of the Trial

In his fifth issue, appellant contends the trial court erred when it overruled his objections to the State's closing argument in the punishment phase of the trial. During closing argument, the State may properly address the following areas:

(1) summations of the evidence; (2) reasonable deductions from the evidence; (3) responses to the defendant's argument; and (4) a plea for law enforcement. *Lagrone v. State*, 942 S.W.2d 602, 619 (Tex. Crim.App.1997). Appellant asserts that during her closing argument, the State's prosecutor twice improperly commented on appellant's failure to testify when she referred to appellant's lack of remorse. In appellant's view, the prosecutor's comments violated the Fifth Amendment to the United States Constitution, article I, Section 10 of the Texas Constitution, and article 38.08 of the Texas Code of Criminal Procedure.[9]

 A comment by the prosecutor on a defendant's failure to show remorse can sometimes be a comment on his failure to testify. *Garcia v. State*, 126 S.W.3d 921, 924 (Tex.Crim.App.2004). However, it is well settled that a prosecutor's comment amounts to a comment on a defendant's failure to testify only if the prosecutor manifestly intends the comment to be, or the comment is of such character that a typical jury would naturally and necessarily take it to be, a comment on the defendant's failure to testify. *Wead v. State*, 129 S.W.3d 126, 130 (Tex.Crim.App.2004). To violate the right against self-incrimination, the offending language must be viewed from the jury's standpoint and the implication that the comment referred to the defendant's failure to testify must be clear. *Bustamante v. State*, 48 S.W.3d 761, 765 (Tex.Crim.App.2001). It is not sufficient that the language might be construed as an implied or indirect allusion. *Id.* The test is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify. *Id.* In applying this standard, the context in which the comment was made must be analyzed to determine whether the language used was of such a character. *Id.*

 In the first alleged reference to appellant's failure to testify, the prosecutor was summarizing the evidence in direct response to appellant's wife's testimony, during the punishment phase, that, despite the fact appellant had pled guilty to attempted murder, he had acted in self-defense when he stabbed a person outside a California comedy club and had not voluntarily pled guilty.[10] This argument was a proper summation of the evidence and at worst, was only an indirect allusion that might refer to appellant's failure to testify and which does not intrude on appellant's right against self-incrimination and therefore does not require reversal. *Cannon v. State*, 691 S.W.2d 664, 677 (Tex.Crim.App. 1985).

 While a closer call due to the prosecutor's reference to a lack of remorse by appellant, appellant's contention regarding the second allegedly improper argument is also without merit. In the sec-

---

9. Because appellant has not provided any explanation or authority for construing the Texas Constitution as conferring greater protection in this area of the law than the federal constitution, we will not separately address his state constitutional argument. *Johnson v. State*, 853 S.W.2d 527, 533 (Tex.Crim.App. 1992).

10. The prosecutor's exact argument was: "And you will look at this and you know that he voluntarily pled guilty to this. And, of course, he wants to put his wife up here to give a whole other story about a law that doesn't exist as to why she couldn't tell her side of the story." Appellant's trial counsel then interposed an objection not at issue in this appeal. The prosecutor then continued her argument: "Where on here does it say it was involuntarily [sic]? Once again, running and hiding from his own responsibility. He can't even—being here today and they can't take responsibility for their actions."

ond incident, the prosecutor was making a plea for law enforcement.[11] The argument was made in support of the prosecutor's plea for a sixty-year sentence and she summarized the evidence with respect to appellant's conduct in committing the murder at issue here, fleeing the country, and then committing the attempted murder in California. Because the prosecutor's comments (1) were supported by the evidence heard by the jury during the trial; (2) used a summary of that evidence as part of a call for law enforcement; and (3) was not a direct comment on appellant's failure to testify, the prosecutor's argument did not infringe on appellant's right against self-incrimination. *Garcia*, 126 S.W.3d at 924. We overrule appellant's fifth issue on appeal.

**F. The Trial Court Did Not Abuse Its Discretion When it Admitted Into Evidence During the Punishment Phase of the Trial, Two Handguns Found in Appellant's Possession**

During the punishment phase of the trial, the State sought to admit into evidence two handguns found in appellant's possession early in the murder investigation. Neither handgun was the murder weapon.

Appellant objected that the handguns were not relevant. The trial court overruled the objection and admitted the handguns into evidence. Appellant now contends that was an abuse of the trial court's discretion.

During the punishment phase, evidence may be offered as to any matter the court deems relevant to sentencing. *See* Tex.Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Vernon 2006). Sentencing presents different issues than a verdict of guilt or innocence because the jury or trial judge chooses from a punishment range rather than deciding whether a defendant is guilty. *Rogers v. State*, 991 S.W.2d 263, 265 (Tex.Crim.App.1999). In ascertaining what is relevant to sentencing, the focus is on what is helpful to a jury in deciding an appropriate sentence for a defendant. *Erazo v. State*, 144 S.W.3d 487, 491 (Tex. Crim.App.2004). Admissibility of evidence at the punishment phase of a non-capital felony offense is a function of policy rather than relevancy. *Id.* This is so because by and large, there are no discreet factual issues at the punishment stage. *Id.* Because the material issue at punishment is so indistinct, relevancy of proffered evi-

11. The argument at issue here ran:

> When you leave here today and you go back to work, people will ask you where have you been the last week. Where have you been? And you'll say you know, I was a juror in a murder case. And we found him guilty pretty fast, in about four hours. And then—then they're going to say what was [sic] the facts—what was the case about? And you're going to say well, we heard about this guy, the defendant. His name was Cesar Andrade. He was driving on the road, and really for no reason, he killed a 19–year–old boy, just four shots. We know of at least four shots without hesitation, without any remorse, no care in the world. Could care less about the boy he killed that night. He doesn't care. He has no remorse. As he's here in court today, no remorse.

> \* \* \*
>
> Now—and they'll say he shot him for no reason at all. And you're like yes. And then you'll tell them and he ran. As soon as the police caught on to him, he ran. And he wasn't caught until 2003 in California for attempted murder. And they'll say attempted murder. And you'll say yes. And they'll say what happened in that case? And you'll say well, they flew down a victim here from California who said the same thing. For no reason he stabbed him in the back—in the back with a knife. Didn't even see it coming.
> \* \* \*
>
> I ask you to give Mr. Andrade as much mercy as he gave Margarito Resendez that day, which is none at all. I ask you to give him no less than 60 years and up to life for taking a human life.

dence cannot be determined by deductive processes. *Sunbury v. State*, 88 S.W.3d 229, 233 (Tex.Crim.App.2002). Some of the policy reasons to be considered when determining whether to admit punishment evidence include giving complete information for the jury to tailor an appropriate sentence for the defendant; the policy of optional completeness; and admitting the truth in sentencing. *Id.* at 233–34. The circumstances of the offense itself or the defendant himself will be admissible at the punishment phase. *Miller–El v. State*, 782 S.W.2d 892, 896 (Tex.Crim.App.1990).

 Evidence that one week after the murder appellant possessed two handguns, one in the truck used in the commission of the murder and one in his bedroom, was relevant to sentencing. *See Stewart v. State*, No 09–01–536–CR, 2003 WL 1571547, at *5 (Tex.App.-Beaumont March 26, 2003, pet. ref'd) (not designated for publication) (evidence of a traffic stop in which the defendant was carrying a loaded pistol in the vehicle was relevant to consideration of the defendant's dangerousness and informative to the jury tailoring the sentence); *McFarland v. State*, No. 05–00–00735–CR, 2001 WL 1069643, at *3 (Tex. App.-Dallas Sept.14, 2001, pet. ref'd) (not designated for publication) (photograph of the defendant holding a shotgun and having a pistol tucked in his waistband, while on parole, was relevant because it provided useful information for the jury to use in determining the defendant's sentence); *Keen v. State*, No. 05–98–01381–CR, 2000 WL 222256, at *7–*8 (Tex.App.-Dallas Feb. 28, 2000, pet. ref'd) (not designated for publication) (evidence of weapons and ammunition found in the defendant's truck was admissible for jury to consider in the exercise of unfettered discretion to assess the defendant's punishment). Because the handguns were relevant to sentencing, we overrule appellant's sixth and final issue.

## CONCLUSION

Having overruled each of appellant's issues on appeal, we affirm the judgment of the trial court.

FROST, J. files concurring and dissenting opinion.

KEM THOMPSON FROST, Justice, concurring and dissenting.

I respectfully disagree with the majority's analysis of the third issue in which appellant complains the trial court erred by denying him the opportunity to make offers of proof.

### Offers of Proof

Texas Rule of Evidence 103(b) provides in relevant part that an "offering party shall, as soon as practicable, but before the court's charge is read to the jury, be allowed to make, in the absence of the jury, its offer of proof." TEX. R. EVID. 103(b). The right to make an offer of proof is absolute and the trial court does not have discretion to deny a request to make an offer of proof. *See Spence v. State*, 758 S.W.2d 597, 599 (Tex.Crim.App.1988). If the trial court's violation of Rule 103(b) harms an appellant, the proper remedy is not to reverse the trial court's judgment but to abate the appeal and remand the case to the trial court so that appellant may make the offer of proof. *See id.* at 599–600.

### *Officer Avila*

During the guilt-innocence phase, appellant's counsel stated that he needed to make an offer of proof regarding Officer Avila's testimony. Rather than allowing appellant to make an offer of proof "as soon as practicable, but before the court's charge is read to the jury," the trial judge stated that he would not allow appellant to

make an offer of proof. The trial judge then said that he would allow appellant to make an offer of proof "at the end of the trial"—a point in time that is necessarily after the charge is read to the jury. The substance of the evidence that appellant wanted to put on the record through the offer was not apparent from the context. *See* TEX. R. EVID. 103(a). Therefore, the trial court erred in denying appellant's request to make an offer of proof as to Officer Avila.

It would seem that this error is harmful. *See Spence*, 758 S.W.2d at 599. At no time during the guilt-innocence or punishment phase did appellant make an offer of proof as to Officer Avila's testimony. The majority concludes that the trial court erred, but that this error is harmless because appellant has not assigned error on appeal relating to the trial court's exclusion of any testimony by Officer Avila. *See ante* at p. 226. The only case cited by the majority in reaching this conclusion is *Rivera v. State*, 981 S.W.2d 336, 340–41 (Tex.App.-Houston [14th Dist.] 1998, no pet.), in which this court reasoned that an abatement to allow an offer of proof to be made would have been futile, and thus concluded the trial court's erroneous denial of the opportunity to make an offer of proof was harmless. 981 S.W.2d 336, 340–41 (Tex. App.-Houston [14th Dist.] 1998, no pet.). The stated reason for this conclusion was that the appellant had not assigned any error relating to the evidence to be adduced in the offer of proof and this court chose not to exercise its discretion to allow appellant to file a supplemental brief assigning new error. *See Rivera*, 981 S.W.2d at 341; *see also* Tex.R.App. P. 38.7 (allowing appellate briefs to be amended or supplemented whenever justice requires, on whatever reasonable terms the appellate court may prescribe); *Allen v. State*, 795 S.W.2d 15, 16–17 (Tex.App.-Houston [14th Dist.] 1990, no pet.) (stating courts of

appeals may allow supplemental or amended briefs raising new issues in the interest of justice). Under *Rivera*, failure to assign error relating to the testimony to be adduced from Officer Avila renders the trial court's error harmless only if this court decides not to exercise its discretion to allow appellant to file supplemental briefing asserting error regarding the offer of proof following the making of that offer in the trial court. *See Rivera*, 981 S.W.2d at 341. Though the majority cites *Rivera*, the majority does not address whether this court will exercise its discretion in this way. *See ante* at pp. 226–27.

Under the *Rivera* analysis, this court should exercise its discretion to allow appellant to file a supplemental brief following an abatement for the creation of an offer of proof as to Officer Avila. *Cf. Rice v. State*, 773 S.W.2d 27, 28 (Tex.App.-Houston [14th Dist.] 1989, pet. ref'd) (declining to allow supplemental briefing raising new issues following supplementation of the appellate record because the new issues did not relate to the new parts of the appellate record). If appellant had assigned error in this case as to the testimony of Officer Avila that he wished to elicit in the offer of proof, he would have encountered problems. For example, appellant might not know what Officer Avila's future testimony on abatement would be. Furthermore, if appellant had assigned error in this regard, appellant would have been required to provide argument and analysis, including record citations, as to testimony that has yet be to given and is not in the appellate record. *See* TEX. R. APP. P. 38.1(h). Had he undertaken to do so, he almost certainly would have violated the appellate briefing rules. *See id.* It is unfair to hold appellant to a standard that would require him to guess at what might have been said and

to require him to give record citation for facts not in the appellate record. Given these circumstances, this court should exercise its discretion to allow appellant to file a supplemental brief as to the offer of proof as to Officer Avila. If the court were to decide to do so, then the trial court's erroneous denial of an offer as to Officer Avila would not be harmless, and this court would have to abate and remand this case to the trial court to allow an offer to be made as to Officer Avila. This court errs in failing to do so.

### Robert Baldwin

Presuming, without deciding, that appellant preserved error as to the trial court's failure to allow him to make an offer of proof as to Robert Baldwin before the charge was read to the jury in the guilt-innocence phase, the majority correctly concludes that the error is harmless because our record contains appellant's offer of proof as to what he wanted to introduce in the guilt-innocence phase. Although this offer of proof was made late (during the punishment phase), the delay would not prevent appellant from preserving error as to the exclusion of this testimony if the trial court erroneously prevented appellant from timely making an offer. In addition, because this testimony was in the record when appellant filed his appellate brief, he could have and should have assigned and briefed any error relating to Baldwin's testimony that he wanted this court to consider. Thus, this court can appropriately deny appellant the opportunity to add an issue on this point in a supplemental brief. Therefore, the court correctly determines

that, as to the Baldwin offer, the trial court's error is harmless.

### Maria Resendez

The majority does not address the offer of proof as to the testimony of the complainant's mother, Maria Resendez. Appellant sought to make an offer of proof as to testimony that he wanted to elicit from her during the punishment phase. At first, the trial court, when requested, would not let appellant make an offer, indicating that appellant would be permitted to make the offer at the end of trial.[1] After appellant objected to being forced to wait until the end of trial, the trial court allowed appellant to make an offer before the charge was read to the jury. Under the third issue, appellant argues that the trial court erred by refusing to allow him to make offers of proof and by forcing him to wait to make them until after the charge had been read to the jury. However, the trial court did not refuse to let appellant make an offer as to Resendez, and the trial court did not force him to do so after the charge was read to the jury. Therefore, appellant's arguments lack merit as to the Resendez offer. Although the trial court did stop this offer before appellant had asked all of his questions, appellant has not briefed any argument on appeal regarding such a complaint. *See* TEX. R. APP. P. 38.1(h); *Russeau v. State,* 171 S.W.3d 871, 881 (Tex.Crim.App.2005). Therefore, the third issue lacks merit as to the Resendez offer of proof.

### Conclusion

Appellant's third issue lacks merit as to the offers of proof regarding Robert Bald-

---

1. The majority states that Resendez's testimony does not fall within the purview of appellant's third issue complaining of the trial court's refusal to allow appellant the opportunity to make offers of proof. *See ante* p. 227, n. 7. The majority reaches this conclusion because the trial court eventually allowed ap-

pellant to make an offer of proof as to Resendez. This fact, however, does not change the reality that, at first, the trial court did not allow appellant to make an offer of proof as to Resendez and that appellant complains on appeal that the trial court refused to allow him to make an offer of proof as to Resendez.

win, Officer Riddle, and Maria Resendez. However, the trial court's error in denying appellant the opportunity to make an offer of proof as to Officer Avila is harmful. Therefore, this court should sustain the third issue as to Officer Avila, abate this appeal for proceedings in the trial court to allow appellant to make an offer of proof as to Officer Avila, and allow appellant to file a supplemental brief as to this testimony. To the extent the court does not do so, I respectfully dissent. Otherwise, I concur in the court's judgment.