**Affirmed and Memorandum Opinion filed February 24, 2015.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-13-00376-CR

_____

## CARLOS DANIEL FERNANDEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 183rd District Court
Harris County, Texas
Trial Court Cause No. 1344140**

## M E M O R A N D U M   O P I N I O N

Appellant Carlos Fernandez was charged with capital murder and convicted of the lesser-included offense of murder. He challenges his conviction in four issues. We conclude appellant did not preserve his challenge to an impermissibly suggestive pretrial photographic identification. Regarding appellant's argument that the trial court admitted evidence of an extraneous offense contrary to Texas Rule of Evidence 403, we hold that any error was harmless because the evidence

concerned appellant's intent to commit capital murder and the jury did not convict him of that offense. Appellant also attacks the admission of his confession to the extraneous offense on the grounds that the confession was involuntarily given. We hold the trial court did not err in admitting the confession because it was voluntarily given, and in any event, its admission was harmless beyond a reasonable doubt. Finally, appellant argues he was entitled to an instructed verdict on the capital murder charge because the state failed to provide legally sufficient evidence of intent. Any error in this regard was likewise harmless, however, because appellant was convicted of the lesser-included offense of murder. We therefore affirm the trial court's judgment.

## BACKGROUND

Appellant was convicted of murdering complainant Miguel Pedro Rosales Ramos. Jesse Sanchez testified that he met the complainant one evening at a convenience store. After the complainant purchased some food, he and Sanchez went into an alley near the store. Three men and one woman who were armed got out of a car nearby and asked the complainant and Sanchez for money. When the complainant refused, a fight ensued. Sanchez testified he heard the sound of a pistol and saw the complainant fall. The assailants then fled the scene. Sanchez went to see a friend, who called the police. Dr. Sara Doyle, an assistant medical examiner for the Harris County Institute of Forensic Sciences, conducted an autopsy and testified that the complainant died from a gunshot wound to his chest.

Appellant subsequently confessed to the crime and was charged with the capital murder of complainant Ramos. In his opening statement to the jury, appellant's trial counsel argued that appellant lacked the requisite intent to be convicted of the offense and instead was guilty of murder.

2

To counter that argument, the State sought to introduce evidence of an extraneous offense later committed by appellant. Outside the presence of the jury, Antonio Chamorro testified that one evening, three people—two men and one woman—came into his home carrying guns. Chamorro identified appellant as one of the assailants. The assailants instructed Chamorro and his family to gather their phones and credit cards. They threatened to kill the family if they did not cooperate. After the family handed over their property, the assailants left the house through the garage.

The female assailant—later identified as Victoria Correa, appellant's girlfriend—walked back into the house and asked Chamorro whether he had handed over his ATM or debit card. He responded, "Let me see. Let me get close so I can see it." As Chamorro approached her, he grabbed for her gun and pulled the trigger. Correa was hit in the upper thigh. Chamorro then closed and locked the garage door to protect his family. Appellant came to the front door and forced his way into the home. Chamorro grabbed for appellant's gun, and appellant shot him in the neck. With the gun still in appellant's hand, Chamorro pulled it to one side. Appellant nevertheless managed to pull the trigger and shot Chamorro five more times. As Chamorro and appellant continued to struggle for the gun, Correa crawled to the door and fired at Chamorro. She missed and hit the wall. The third assailant then reentered the home, and appellant instructed him to shoot Chamorro in the head. Rather than shoot, the third assailant used the back of a shotgun to strike Chamorro until he let go of appellant's gun. The three assailants then fled, and Chamorro was eventually taken to the hospital.

In arguing that the trial court should admit this evidence, the State pointed out that appellant had shot Chamorro six times and instructed another individual to shoot him in the head. The State contended these actions should be admitted to

rebut appellant's argument that he lacked the intent to kill the complainant. Appellant's trial counsel responded that the extraneous offense would show a propensity for bad character, which Texas Rule of Evidence 404(b) was designed to prevent. He also lodged an objection under Texas Rule of Evidence 403, contending the prejudicial effect of the evidence substantially outweighed its probative value. The trial court stated it found the extraneous offense more probative than prejudicial and admitted the evidence. Before the jury heard testimony regarding the extraneous offense, the court gave a limiting instruction upon request from appellant's trial counsel. The court said:

> You are further instructed that if there is any evidence before you in this case regarding the Defendant's committing an alleged offense or offenses other than the offense alleged against him in the indictment in this case, you cannot consider such evidence for any purpose unless you find and believe beyond a reasonable doubt that the Defendant committed such other offense or offenses, if any, and even then you may only consider the same in determining the motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident of the Defendant, if any, in connection with the offense, if any, alleged against him in the indictment and for no other purpose.

The trial court provided an identical instruction in its jury charge.

Appellant was apprehended following the invasion of Chamorro's home. Detective Wallace Wyatt of the Harris County Sheriff's Office was called to investigate the crime. He was informed that a suspect from the home invasion was at a hospital, had been shot, and that two other individuals had been detained. Wyatt traveled to the hospital and identified the individuals as appellant, Correa, and Jesus Rodriguez. Correa was receiving treatment for the gunshot wound. Wyatt spoke with appellant briefly at the scene and then decided to transport him to an office nearby for an interview. Appellant confessed to his role in the home invasion.

Sergeant Brian Harris of the Houston Police Department's Homicide Division testified that a few days later, he went to speak to appellant about his role in the death of the complainant. Appellant provided a statement in which he confessed to shooting the complainant but stated he did not intend to kill him.

Appellant challenged the admission of his confession to Wyatt regarding the extraneous offense.[1] In his motion to suppress, appellant stated he was intoxicated at the time of his confession to Wyatt. At the hearing on the motion, appellant testified that he had taken six Xanax pills at approximately 9 o'clock in the evening. Wyatt's interview occurred at 2:30 the following morning. Appellant contended that he could not remember the interview. He further could not recall receiving *Miranda* warnings or waiving his rights.

Dr. Terry Rustin, an expert witness, testified on behalf of appellant at the hearing. Rustin stated that if taken on an empty stomach, Xanax would be absorbed into the body in twenty to thirty minutes. He told the trial court that Xanax has a half-life of four to six hours.[2] He also testified that taking six Xanax pills would magnify its effects. He testified that Xanax decreases a person's inhibitions, impairs a person's judgment, and impairs a person's ability to think. Specifically, Dr. Rustin asserted that Xanax could impair a person's ability to make a decision to waive their *Miranda* rights and consider the consequences that would follow. According to Dr. Rustin, the videotape of the interview showed that appellant slurred his speech and was at times incoherent. He opined appellant did not comprehend he was under arrest. Dr. Rustin testified that it appeared appellant was intoxicated, and as a result would have difficulty understanding his *Miranda*

---

[1] In the trial court, appellant also challenged the admission of his confession for the crime charged, but he does not press that challenge on appeal.

[2] Half-life means the length of time it takes for half of a drug to metabolize or leave the system.

5

warnings and thinking clearly in order to make a decision about waiving his rights.

Detective Wyatt testified that appellant indicated he understood his *Miranda* rights and waived them. He also noted appellant's slurred speech but stated that appellant "just seemed tired." He admitted, however, that slurred speech is a sign of intoxication. He further conceded appellant was "obviously impaired in some way" and that he would not have let appellant drive a car in that condition. He contended that appellant was not sufficiently impaired to refrain from interviewing him. After hearing the foregoing testimony, the trial court admitted the confession.

The jury convicted appellant of the lesser-included offense of murder and sentenced him to life in prison. This appeal followed.

## ANALYSIS

### I. Appellant waived any error concerning the admission of a suggestive pretrial identification by failing to object on that basis at trial.

In his first issue, appellant argues the trial court erred in denying his motion to suppress an impermissibly suggestive pretrial photographic identification. Appellant further contends the pretrial photographic lineup served to taint a subsequent in-court identification.

A pre-trial identification procedure may be so suggestive and conducive to mistaken identification that subsequent use of that identification at trial would deny the accused due process of law. *Barley v. State*, 906 S.W.2d 27, 32–33 (Tex. Crim. App. 1995). We employ a two-step test to assess the admissibility of a pre-trial identification and a subsequent in-court identification. *Id.* at 33. First, we determine whether the pretrial identification procedure was impermissibly suggestive. *Id.* Second, we examine whether the impermissibly suggestive procedure created a substantial likelihood of irreparable misidentification. *Id.* at 33. We examine the totality of the circumstances to determine whether appellant

6

has satisfied both of these requirements. *Gamboa v. State*, 296 S.W.3d 574, 581–82 (Tex. Crim. App. 2009). If the totality of the circumstances reveals no substantial likelihood of misidentification despite a suggestive pretrial procedure, subsequent identification testimony will be deemed "reliable," and reliability is the linchpin in determining the admissibility of identification testimony. *Webb v. State*, 760 S.W.2d 263, 269 (Tex. Crim. App. 1988) (citing *Manson v. Brathwaite*, 432 U.S. 98 (1977)).

Failure to object at trial to the identification procedure, however, constitutes waiver. *Perry v. State*, 703 S.W.2d 668, 671 (Tex. Crim. App. 1986) ("[W]e find and hold that the failure of the appellant to complain or object in the trial court about the out of court identification procedure or the in court identifications constituted a procedural default under our law, and, by failing to complain or object, for purposes of appeal, he waived the error."); *Degarmo v. State*, 922 S.W.2d 256, 268 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd).

We have searched the record and found no motion to suppress the pretrial identification on the ground that the procedure used was impermissibly suggestive. At the identification hearing, Sanchez testified that he talked to the police the day after the complainant was killed. Sanchez initially said he had not been shown any photographs, but the State showed Sanchez Exhibit 102, and he recognized his signature. In the exhibit, Sanchez identified appellant as the person who shot the complainant. Sanchez was unable to identify appellant at the hearing, however, as he stated too much time had passed.

Appellant's trial counsel argued that given Sanchez's inability to recall his pretrial identification of appellant, it was unreliable and should not be admitted. The trial court ruled that it would admit Sanchez's pretrial identification. When the State formally offered the identification exhibit into evidence and sought to

publish it to the jury, appellant's counsel merely "renew[ed] the same objections as before." He did not assert the identification procedure was impermissibly suggestive. Because appellant failed to complain in the trial court that the pretrial identification procedure was impermissible suggestive, we conclude he did not preserve that complaint as a ground for appeal. *See Perry*, 703 S.W.2d at 671.

Even if counsel had objected on suggestiveness grounds below, having reviewed the exhibit and the surrounding circumstances in the record, we hold that the trial court would not have erred in concluding that appellant failed to show that the identification procedure was impermissibly suggestive. *See Barley*, 906 S.W.2d at 32–33. Moreover, given that appellant confessed to the charged offense and identity was not an issue at trial, appellant has failed to show that any error in admitting the pretrial identification was harmful.

Appellant further contends that Sanchez's in-court identification was likewise tainted by the allegedly impermissibly suggestive pretrial identification procedure. But the record reveals Sanchez was unable to identify appellant as the killer during the hearing and before the jury. Thus, there was no in-court identification, much less a tainted one. Accordingly, we overrule appellant's first issue.

## II. Any error in admitting evidence of an extraneous offense to show intent is harmless because the jury did not convict appellant of capital murder.

In his second issue, appellant argues the trial court erred in admitting evidence of an extraneous offense because its probative value was substantially outweighed by its danger of unfair prejudice.[3] Under our rules of evidence, relevant evidence is generally admissible. *See* Tex. R. Evid. 402; *Erazo v. State*,

---

[3] Although appellant also objected to the admission of the extraneous offense under Rule 404(b) at trial, he does not address Rule 404(b) on appeal.

144 S.W.3d 487, 499 (Tex. Crim. App. 2004). Evidence is relevant if it has any tendency to make the existence of any fact of consequence to the determination of the action more or less probable than it would be without the evidence. Tex. R. Evid. 401; *Andrade v. State*, 246 S.W.3d 217, 227 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd).

Relevant evidence may be excluded by the trial court under Rule 403, however, if its probative value is substantially outweighed by the danger of unfair prejudice from its admission. Tex. R. Evid. 403. There is a presumption that relevant evidence is more probative than prejudicial. *Andrade*, 246 S.W.3d at 227. The opponent of the evidence has the burden to demonstrate that its prejudicial effect substantially outweighs its probative value. *Montgomery v. State*, 810 S.W.2d 372, 377 (Tex. Crim. App. 1990). If the opponent of the evidence lodges an objection based on Rule 403, the trial court must weigh the probative value of the evidence against the potential for unfair prejudice. *Andrade*, 246 S.W.3d at 227. The criteria to be used in ruling on the objection include the following: (1) the probative value of the evidence; (2) the potential the evidence has to impress the jury in an irrational but nevertheless indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence to prove a fact of consequence. *Id.* at 228.

In reviewing an argument that the trial court erred in admitting evidence under Rule 403, we apply Texas Rule of Appellate Procedure 44.2(b), which provides that an appellate court must disregard non-constitutional error that does not affect substantial rights. Tex. R. App. P. 44.2(b); *Reese v. State*, 33 S.W.3d 238, 243 (Tex. Crim. App. 2000). Under that rule, an appellate court may not reverse for non-constitutional error if the court has fair assurance that the error did not have a substantial and injurious effect or influence in determining the jury's

verdict. *See Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004). When determining the likelihood that the error adversely affected the jury's verdict, we consider the entire record. *Schmutz v. State*, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014). This includes testimony, physical evidence, jury instructions, the State's theories and any defensive theories, closing arguments, and voir dire, if applicable. *Bagheri v. State*, 119 S.W.3d 755, 763 (Tex. Crim. App. 2003). Important factors include the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, whether the State emphasized the error, and whether overwhelming evidence of guilt was present. *Schmutz*, 440 S.W.3d at 39.

Assuming without deciding that the trial court erred in admitting evidence of the extraneous offense, we hold the record of appellant's trial provides fair assurance that the error did not have a substantial and injurious effect or influence in determining the jury's verdict. *Garcia*, 126 S.W.3d at 927. Appellant had confessed to shooting complainant Ramos. The State's purpose for introducing the extraneous-offense evidence was to demonstrate appellant's intent to kill the complainant in order to convince the jury to convict appellant of capital murder. As noted above, the trial court provided a limiting instruction before the extraneous-offense evidence was introduced and included the instruction in its jury charge, limiting the jury's consideration of the evidence only to the charge in the indictment—capital murder. In closing arguments, the State argued the extraneous offense showed appellant's intent to murder the complainant and told the jury to consider the extraneous offense for that purpose, not to "get you angry." By contrast, appellant's trial counsel argued the extraneous offense was irrelevant in determining what occurred on the night of the complainant's murder. He argued appellant did not "conscious[ly] desire to cause the death of Pedro Ramos." As a

10

result, appellant's counsel argued appellant should be convicted of murder, not capital murder.

Appellant's argument was ultimately successful, as the jury convicted appellant of the lesser-included offense of murder. Thus, "this jury was manifestly able to consider the probative evidence and separate it from marginally relevant evidence because it did . . . convict[] appellant of the lesser-included offense" of murder. *See Casey v. State*, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007) (holding error harmless in trial court's admission of prejudicial evidence because the jury acquitted one of the defendants and convicted appellant of a lesser-included offense). Accordingly, we hold any error in admitting evidence of the extraneous offense was harmless, and we overrule appellant's second issue.

## III. The trial court did not abuse its discretion in admitting appellant's statement concerning the extraneous offense over his voluntariness objection.

In his third issue, appellant contends the trial court erred in admitting his confession because his intoxication made the statement involuntary. As explained above, appellant gave two confessions to the police. One confession concerned the extraneous offense for which appellant was initially apprehended. Appellant's confession to the offense charged here occurred several days later. Although appellant's brief refers to Exhibit 53, the confession for the crime charged, the record establishes that appellant only objected on voluntariness grounds to the admission of Exhibit 70, the confession concerning the extraneous offense. In fact, appellant testified he was not intoxicated at the time he confessed to Harris for the crime charged. We therefore address the trial court's admission of Exhibit 70, appellant's statement concerning the extraneous offense.

Article 38.21 of the Texas Code of Criminal Procedure provides that a statement of an accused may be used as evidence against him if it appears that the statement was freely and voluntarily made. Tex. Crim. Proc. Code Ann. art. 38.21 (West 2005). The voluntariness of a statement is assessed by considering the totality of the circumstances under which the statement was obtained. *Creager v. State*, 952 S.W.2d 852, 855 (Tex. Crim. App. 1997). Of principal concern are the characteristics of the accused and the details of the interrogation. *Davis v. State*, 313 S.W.3d 317, 337 (Tex. Crim. App. 2010). Although relevant, evidence of intoxication does not necessarily render a statement involuntary. *Jones v. State*, 944 S.W.2d 642, 651 (Tex. Crim. App. 1996). When the record reflects evidence that the accused used narcotics, medications, or other mind-altering agents, the question becomes whether those intoxicants prevented the accused from making an informed and independent decision to waive rights. *Id.*

We review for abuse of discretion a trial court's ruling on a motion to suppress a confession as involuntary. *Delao v. State*, 235 S.W.3d 235, 238–39 (Tex. Crim. App. 2007). The trial court is the sole trier of fact and judge of the credibility of the witnesses and the evidence presented at the hearing on the motion. *Id.* at 239. A trial judge's decision on the admissibility of evidence will not be reversed if it is within the zone of reasonable disagreement. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). We must uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).

The improper admission of an involuntary confession is subject to harmless error analysis. *Ex parte Fierro*, 934 S.W.2d 370, 374 (Tex. Crim. App. 1996). Admission of an involuntary confession offends the Due Process Clause of the

12

Fourteenth Amendment. *Arizona v. Fulminante*, 499 U.S. 279, 303 (1991). Before a federal constitutional error can be held harmless, the court must be able to declare a belief that it did not contribute to the conviction and is harmless beyond a reasonable doubt. *Zuliani v. State*, 903 S.W.2d 812, 824 (Tex. App.—Austin 1995, pet. ref'd).

In *Leza v. State*, the defendant contended that he was under the influence of heroin during his confession. 351 S.W.3d 344, 351 (Tex. Crim. App. 2011). The defendant presented an expert who corroborated his assertion. *Id.* The expert testified that the defendant's capacity to pay attention and make an informed decision was impaired. *Id.* While acknowledging that heroin use is a relevant factor in determining whether a person knowingly and intelligently waived their *Miranda* rights, the Court of Criminal Appeals concluded that the trial court was not obliged to credit the expert's testimony over the testimony of the interrogating officers, who asserted that the defendant was awake and alert, appeared to understand the warnings and the questions propounded to him, and was coherent and appropriate in his responses. *Id.*

Likewise, in this case, the trial court did not abuse its discretion in admitting appellant's confession because the trial court was entitled to credit the testimony of Detective Wyatt over that of Dr. Rustin, appellant's expert. As noted above, Wyatt testified that appellant indicated he understood his rights and waived them. Wyatt also stated that appellant was not impaired to the extent that interviewing appellant was improper.

Moreover, we hold that the admission of appellant's confession to the extraneous offense is harmless beyond a reasonable doubt. Appellant had confessed to shooting the complainant, and appellant's trial counsel urged the jury to convict appellant of murder, not capital murder. The State offered appellant's

confession to the extraneous offense to rebut appellant's argument that he lacked the requisite intent for capital murder. As discussed above, however, the State was unsuccessful and the jury convicted appellant of the lesser-included offense of murder. We therefore conclude that the admission of the extraneous-offense evidence did not contribute to appellant's conviction, and we overrule appellant's third issue.

## IV. The trial court's denial of appellant's motion for instructed verdict is harmless.

In his fourth issue, appellant contends the trial court erred in overruling his motion for an instructed verdict on the charge of capital murder because the State failed to prove his intent. A challenge to the trial court's ruling on a motion for instructed verdict is in actuality a challenge to the sufficiency of the evidence to support the conviction. *Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990). We review evidentiary sufficiency challenges under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). The reviewing court must consider the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013).

Any error in failing to grant a directed verdict on a particular offense is harmless beyond a reasonable doubt when the jury did not find the defendant guilty of that offense. *Jones v. State*, 850 S.W.2d 236, 239 (Tex. App.—Fort Worth 1993, no pet.) (holding trial court's denial of instructed verdict on charged offense was harmless beyond a reasonable doubt because appellant was effectively acquitted of the offense when the jury convicted him of a lesser-included offense);

*see also Sutton v. State*, 35 S.W.3d 737, 739–40 (Tex. App.—Houston [1st Dist.] 2000, pet dism'd). The jury apparently agreed with appellant's argument that the State failed to prove beyond a reasonable doubt that he had the requisite intent to commit capital murder, and instead found him guilty of the lesser-included offense of murder. Accordingly, we hold the trial court's failure to grant a directed verdict on capital murder did not contribute to appellant's conviction and is harmless beyond a reasonable doubt. We thus overrule appellant's fourth issue.

## CONCLUSION

Having overruled appellant's issues, we affirm the trial court's judgment.


/s/     J. Brett Busby
        Justice


Panel consists of Chief Justice Frost and Justices Christopher and Busby.

Do Not Publish — TEX. R. APP. P. 47.2(b).

15