**Affirmed and Memorandum Opinion filed April 3, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00319-CR

---

## ZAJAHN ANTONIO JOHNSON, Appellant

### V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 248th District Court
Harris County, Texas
Trial Court Cause No. 1217869**

---

## M E M O R A N D U M   O P I N I O N

Appellant Zajahn Antonio Johnson was convicted by a jury of capital murder and was sentenced to mandatory life in prison without the possibility of parole. *See* Tex. Penal Code Ann. §§ 12.31(a)(2); 19.03(a)(7) (West 2011). On appeal, appellant presents five issues. In his first two issues, appellant contends the trial court abused its discretion when it admitted into evidence allegedly false and irrelevant testimony regarding appellant's membership in a gang. In his third

issue, appellant asserts he received ineffective assistance of counsel because his trial counsel did not obtain a copy of the transcript from his first trial on the capital murder charges. In his fourth issue, appellant contends his trial counsel was ineffective because he did not object to the admission of an unadjudicated extraneous offense. Finally, in his fifth issue, appellant argues his trial counsel was ineffective in three ways: (1) failing to object to hearsay testimony, (2) not exercising any peremptory strikes on potential jurors, and (3) not calling any witnesses for the defense. Concluding none of appellant's issues on appeal require reversal, we affirm the trial court's judgment of conviction.

## BACKGROUND

This appeal arises out of the murders of two men: Gilbert Cruz and Henry Sepulveda. Appellant was tried for those murders in 2011, but the jury could not reach a verdict. In his second trial, appellant did not contest his identity as the person who fired the shots that resulted in the deaths of both Cruz and Sepulveda. Appellant instead argued he was acting in self-defense when he shot both men. Appellant was represented by the same attorney in both trials. Appellant has not challenged the sufficiency of the evidence supporting his conviction.

On the night of August 21, 2008, detectives from the Houston Police Department were called to investigate a shooting at a west-side park. When the detectives arrived, they found a trail of blood starting inside the parking lot and running north out of the lot. Police investigators recovered eleven spent shell casings from the parking lot sidewalk. Finally, the investigators found a discarded milkshake cup, which was still cold, in the grass beside the sidewalk.

From the park, the detectives proceeded to a nearby hospital where victims of a shooting were being treated. At the hospital, the detectives found a Chevrolet Tahoe parked directly outside the emergency room doors. Officer Jose Pena, a

crime scene investigator, observed at least eight bullet holes in the Tahoe. Pena testified that the bullet holes had different shapes, which suggested that some of the shots had been fired directly at the vehicle, while others had been fired at an angle. The detectives also observed a substantial amount of blood in the Tahoe's back seat and dripping from the passenger-side rear door down onto the running board.

Inside the hospital, police found one of the shooting victims, Gilbert Cruz, already deceased from a single bullet wound to his forehead. The police also determined that Henry Sepulveda, one of four passengers in the Tahoe, had been shot in the abdomen. Officer Eric Garza attempted to collect as much information from Sepulveda as possible before he was rushed to surgery. Sepulveda told Officer Garza that he and his friends were "chilling" at the park when a black man ran up, yelled "BGB," and started shooting at them. Police learned that Sepulveda had been seated in the front passenger seat of the Tahoe and Gilbert had been in the rear passenger seat. Officer Garza testified that "BGB" is a gang. Sepulveda eventually died as a result of the gunshot wound he suffered at the park.

Officer Garza also tried to interview David Cruz, Gilbert's brother, who was one of the passengers in the Tahoe when the shooting occurred. Officer Garza testified that David appeared to be highly intoxicated and was initially uncooperative. David eventually told Officer Garza that he was in a gang called the "Crips," and that a rival gang member named "Dime" had run up and started shooting at them.

A few days later, the Tahoe was processed by Officer D.C. Lambright at the HPD vehicle examination building. Officer Lambright found a total of nine visible bullet strikes to the passenger side of the vehicle. Based on the trajectories of those bullets, Officer Lambright opined that either the car, the shooter, or both

3

were moving when the bullets struck the Tahoe. Officer Lambright did not find any weapons or spent cartridges inside the vehicle.

At trial, Officer Lambright testified that the lack of broken glass in the front passenger seat and floor area led him to believe the front passenger window had been rolled all the way down when the shooting occurred. Officer Lambright also testified that he believed the rear passenger window was partially down because there was no glass remaining in the top frame of the window.

Detective Richard Martinez conducted the follow-up investigation of the shooting. Martinez testified that he believed the shooting may have been gang-related. A confidential informant had provided the police with the name of a possible suspect: "Grim."

Officer Cynthia Purl, who worked with the Westside Divisional Gang Unit, ran the alias "Grim" through the gang database and came up with a person named Zajahn Johnson who lived in the same area where the homicides had occurred. Officer Purl testified that appellant was not listed in the gang database when she initially ran a search in 2008 but had been added well before the start of his trial. Officer Purl testified that appellant is documented as a "Black Disciple" or "BD" gang member. Officer Purl further testified that the Black Disciples fall under the umbrella of the Folk Nation.

Detective Martinez also interviewed David Cruz. David initially told Martinez that the person who shot his brother and Sepulveda was in a car with two other Hispanic males. Martinez testified that David later admitted he had initially not been truthful because he was worried his brother would be looked upon "badly" because he "had been talking some noise out there." David provided Martinez with a second statement describing a black man and a woman. David also told Martinez that he and Gilbert were "associates" of the "Crips" gang.

4

David indicated that Gilbert and the black man had been cussing at each other and that he tried to keep Gilbert from getting out of the Tahoe.

During the investigation, the police learned that Jameka Stevenson, appellant's girlfriend at the time, was with the suspect during the shooting. Martinez interviewed Stevenson, who told him that appellant had started shooting when the boy in the backseat of the vehicle rolled down his window and pulled out a gun.

At trial, the witnesses to the offense gave varied accounts of the shooting. David Cruz testified that on the night of the shooting, he was drinking at his sister's house with his brother Gilbert, Sepulveda, and Jose Rico, the driver of the Tahoe. David decided that they should make a trip to the store to buy more beer. David testified that he was so intoxicated he could barely walk. According to David, he passed out and could not remember going to the park where the shooting occurred. He testified that he woke up at the sound of a gunshot and saw blood on his shirt. The next thing he remembered was waking up at the hospital.

Rico testified that he drove with Sepulveda and Gilbert to Houston so that Gilbert could pick up some DVDs from his mother's house. Rico stated that he was not carrying a weapon and that he was not in a gang. After arriving at Gilbert's mother's house, Rico testified they decided to drive to a store a few blocks away to buy beer.

Rico testified that on the way back from the store, an argument ensued between his friends and someone outside the vehicle. Rico testified that he did not know who started the argument and all he heard was a bunch of yelling and screaming back and forth. Rico testified that he continued driving until he heard someone say "turn around," so he turned the Tahoe around, drove back, and then pulled into a parking lot. Rico saw a black man and a black woman on the

sidewalk.

Rico testified that he did not know what was going to happen when he pulled the Tahoe into the parking lot. He testified that he believed one of the occupants on the passenger side of the Tahoe might get out of the vehicle to fight the man on the sidewalk. Rico testified that he was about to put the car in park when he heard someone say "drive, drive, drive," followed by gunshots. Rico testified that the shooting continued as he drove away. After realizing that Sepulveda was hurt, Rico drove to a nearby hospital. Rico also testified that he did not see David, Gilbert, or Sepulveda carrying a weapon that night.

Jameka Stevenson testified that she was involved in a romantic relationship with appellant at the time of the shooting. Stevenson stated that she knew appellant as "Grim." Stevenson testified that on the night of the shooting, appellant met her as she was getting off work at a Jack in the Box. She stated they were walking together through a park when a car made a u-turn and then pulled into the park parking lot. Stevenson testified she believed the occupants of the car were about to "pull a drive-by" shooting. Stevenson testified that she dropped her milkshake when the car pulled up. She stated the driver asked them "what set [they] claim[ed]," as if they were in a gang. She responded: "We don't claim your set. I'm from Louisiana, or whatever." Stevenson testified that the backseat passenger was holding a gun, which he pointed out of the window at them, and that he attempted to get out of the car. Stevenson testified that she started running at that point and she then heard three or four gunshots. Stevenson testified at trial that she did not see the shooter. Stevenson acknowledged, however, that she may have previously told Detective Martinez that she saw appellant pull out a gun and start shooting.

6

Assistant medical examiner Dr. Darshan R. Phatek performed autopsies on Gilbert and Sepulveda. Dr. Phatek testified that Gilbert had a gunshot wound to the right side of his forehead. Dr. Phatek testified that he did not find any evidence that Gilbert had fired a gun. Dr. Phatek observed a distribution of abrasions and superficial incised wounds on Gilbert's face, which were consistent with injuries caused by shattered glass and Gilbert's head then collapsing onto and resting on broken glass on the window sill of the passenger door. Based on these wounds, Dr. Phatek opined that Gilbert's head had been behind and facing the passenger door window glass when the fatal shot was fired. Dr. Phatek further opined that the fatal bullet had first traveled through the glass of the vehicle's passenger-side window before hitting Gilbert in the forehead. Dr. Phatek concluded that Gilbert would not have sustained the abrasions and other superficial injuries on his face if his head and arms had been outside of the vehicle when he was struck by the bullet. Finally, Dr. Phatek testified that if Gilbert had been holding a gun outside the window at the time he was shot, he would have dropped the gun outside the vehicle because his death was immediate.

According to Dr. Phatek, Sepulveda died from complications caused by the gunshot wound to his abdomen. Dr. Phatek opined that Sepulveda was seated in the Tahoe with his body facing forward when he was shot.

At the conclusion of the evidence, the jury found appellant guilty of capital murder and the trial court imposed the mandatory sentence of life in prison without the possibility of parole. Appellant did not file a motion for new trial.

## ANALYSIS

Appellant's issues on appeal can be divided into two groups. In the first, appellant contends the trial court abused its discretion when it allowed into evidence testimony regarding appellant's alleged gang involvement. In the second

7

group of issues, appellant asserts his trial counsel rendered ineffective assistance. We turn first to appellant's evidentiary issues.

**I.      The trial court did not abuse its discretion when it admitted evidence regarding appellant's membership in a gang.**

In both his first and second issues, appellant contends the trial court abused its discretion when it admitted testimony regarding appellant's membership in a gang. Appellant initially argues the trial court should not have admitted the testimony because it was incorrect and therefore not relevant. Based on this premise that the evidence was false, appellant then asserts the evidence's probative value was substantially outweighed by its prejudicial effect. Assuming without deciding appellant preserved these issues for appellate review, we conclude he has not established that the trial court abused its discretion when it admitted evidence of appellant's gang membership.

**A.      Standard of review**

Evidence is relevant if it has any tendency to make the existence of any fact of consequence to the determination of the action more or less probable than it would be without the evidence. Tex. R. Evid. 401; *Andrade v. State*, 246 S.W.3d 217, 227 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). Evidence does not need to prove or disprove a particular fact by itself to be relevant. *Ho v. State*, 171 S.W.3d 295, 301 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). Instead, it is sufficient if the evidence provides a small nudge toward proving or disproving some fact of consequence. *Id.* A trial court's relevance rulings will not be reversed absent an abuse of discretion. *Massey v. State*, 933 S.W.2d 141, 154 (Tex. Crim. App. 1996). In other words, we must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).

Relevant evidence is generally admissible.  *See* Tex. R. Evid. 402; *Erazo v. State*, 144 S.W.3d 487, 499 (Tex. Crim. App. 2004).  Relevant evidence may be excluded by the trial court under Rule 403, however, if its probative value is substantially outweighed by the danger of unfair prejudice from its admission.  Tex. R. Evid. 403.  There is a presumption that relevant evidence is more probative than prejudicial.  *Andrade*, 246 S.W.3d at 227.  The opponent of the evidence has the burden to demonstrate that its prejudicial effect substantially outweighs its probative value.  *Montgomery v. State*, 810 S.W.2d 372, 377 (Tex. Crim. App. 1990).  If the opponent of the evidence lodges an objection based on Rule 403, the trial court must weigh the probative value of the evidence against the potential for unfair prejudice.  *Andrade*, 246 S.W.3d at 227.  The criteria for making that determination include the following: (1) the probative value of the evidence; (2) the potential the evidence has to impress the jury in an irrational but nevertheless indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence to prove a fact of consequence.  *Id.* at 228.

A trial court's ruling on a Rule 403 objection also will not be overturned absent an abuse of discretion.  *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005).  We must uphold the trial court's decision if it is within the zone of reasonable disagreement.  *Id.* at 439–40.

**B.    Disputed evidence regarding appellant's gang membership is relevant under Rule 402.**

Appellant bases his Rule 402 and 403 arguments on the premise that the testimony regarding appellant's membership in a gang was incorrect, at least at the point in time when the two murders at issue in his trial took place.  Appellant contends that because the testimony was incorrect, it had no relevance, and was

9

therefore inadmissible under Rule 402. *See* Tex. R. Evid. 402. Appellant then asserts that because the evidence was incorrect, the potential for unfair prejudice substantially outweighed its non-existent probative value, making it inadmissible under Rule 403. *See* Tex. R. Evid. 403.[1]

Appellant's arguments under his first issue are based entirely on the premise that the evidence regarding appellant's gang membership was incorrect. In making this argument, appellant relies completely on Officer Purl's testimony that appellant was not documented as a gang member in the police database at the time of the shooting. In appellant's view, this evidence establishes that appellant was not in fact a member of a gang, so any evidence suggesting otherwise is incorrect and therefore inadmissible.

We disagree because there was other evidence suggesting appellant was a member of a gang at the time of the shootings. For example, there was testimony without objection that the shooter yelled "BGB" before shooting, and that BGB was a gang. As noted above, appellant did not contest his identity as the shooter.

Appellant's argument thus goes to the weight and credibility of the evidence, not its admissibility. *See Wright v. State*, 178 S.W.3d 905, 920 n.12 (Tex. App.— Houston [14th Dist.] 2005, pet. ref'd) (noting that conflicts in the evidence go to the weight of the evidence, not its admissibility); *Middlebrook v. State*, 803 S.W2d 355, 359 (Tex. App.—Fort Worth 1990, pet. ref'd) (stating that questions about witness credibility go to the weight of the evidence, not its admissibility). It is the jury, not the trial judge that weighs the evidence, resolves conflicts in the evidence, evaluates the credibility of witnesses, and draws reasonable inferences from that

---

[1] Appellant does not argue that his due process rights were violated by admitting evidence known to be false. *See Duggan v. State*, 778 S.W.2d 465, 469 (Tex. Crim. App. 1989) ("Because false evidence corrupts the truth seeking function of trial, a new trial will be necessary unless the false evidence does not violate the accused's right to due process.").

10

evidence. Whether a trial judge believes a witness's testimony is correct is not an appropriate basis on which to exclude the testimony. *See Montgomery*, 810 S.W.2d at 382 ("It would have been improper for the trial court to omit relevant testimony on the basis that she did not believe the particular witness."). Because appellant's first issue is based entirely on the premise that the evidence of gang membership was incorrect, an inappropriate basis for it to be excluded, we conclude he has not shown that the trial court abused its discretion when it admitted the evidence. We overrule his first issue.

**C.** **The trial court did not violate Rule 403 in admitting evidence of appellant's gang membership because it was relevant for purposes beyond establishing the shooter's identity.**

In his second issue, appellant argues the evidence that he was affiliated with a gang was not relevant because the issue of the shooter's identity was not disputed. Appellant also argues that because he was not contesting identity, the probative value of such evidence was substantially outweighed by its prejudicial effect. In response, the State contends the evidence of appellant's gang membership was relevant for purposes beyond identifying the shooter, including establishing a motive for the shooting and rebutting the defensive theory that appellant fired the fatal shots in self-defense. We agree with the State.

Here, the evidence of appellant's gang membership was relevant to show appellant's motive for shooting the two complainants: gang rivalry. *See Vasquez v. State*, 67 S.W.3d 229, 239 (Tex. Crim. App. 2002) (holding evidence of defendant's gang affiliation was relevant and admissible to show motive for gang-related crime). In addition, the evidence was relevant to rebut appellant's defensive theory that he shot at the Tahoe in self-defense and to protect Stevenson. *See Tibbs v. State*, 125 S.W.3d 84, 89 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (holding evidence of defendant's gang involvement was admissible to rebut

11

defendant's theory that the shooting was in self-defense). Thus, the evidence that appellant was a member of a gang was relevant for purposes beyond establishing the identity of the shooter, and the trial court did not abuse its discretion when it admitted the evidence over appellant's relevance objection.

With regard to appellant's argument that the trial court should have excluded the evidence under Rule 403, appellant does not address the factors used in weighing the probative value of the evidence against the danger of unfair prejudice. Instead, appellant argues only that the probative value of the evidence was nonexistent because, in his view, the State's only purpose in seeking the admission of the gang evidence was to prove his undisputed identity as the shooter; therefore, its value was substantially outweighed by the danger of unfair prejudice.

To resolve this issue, we turn to the factors used in balancing the probative value of the evidence against the potential for unfair prejudice. We have already determined that evidence of appellant's gang membership was relevant for purposes beyond identification of the shooter, specifically appellant's motive and to rebut appellant's defensive theory. Thus, we conclude the probative value of the gang evidence was high. We also conclude that the State's need for the evidence was great: to establish appellant's motive for the shooting and to rebut his theory of self-defense. *See Beltran v. State*, 99 S.W.3d 807, 811 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (finding admission of evidence regarding appellant's gang affiliation absolutely necessary to show motive for the crime).

Next, we examine whether the evidence had a strong potential to impress the jury in an irrational and indelible way such that it would find guilt on grounds different from proof of the charged offense. Here, the gang evidence directly related to the circumstances surrounding the fatal shootings at issue in the trial, and it was used by the State to show appellant's motive. In addition, based on the

12

evidence admitted at trial, the jury could reasonably have inferred that some, if not all, of the people involved on both sides of the shooting were associated with gangs in some manner. For these reasons, we conclude that evidence the shooter was a member of a gang did not have a strong potential to impress the jury in such a way that it would irrationally find guilt on an improper basis. *See Vasquez*, 67 S.W.3d at 239–40 (stating evidence of defendant's gang membership was directly relevant to the case because it was used to show motive and therefore did not have a tendency to suggest a decision on an improper basis).

Finally, although several witnesses devoted time to the topic of appellant's gang membership, considering the State's crucial need for the evidence, we conclude that the time used to develop the gang evidence was not so great that it distracted the jury from considering the charged offense. Having evaluated the Rule 403 factors and balanced the prejudicial nature of the information against its probative value, we conclude the trial court did not abuse its discretion when it admitted the evidence over a Rule 403 objection. *See id.* at 240 (holding that any prejudicial effects stemming from admission of evidence of defendant's gang membership did not substantially outweigh the value of showing the motive for the murder); *Beltran*, 99 S.W.3d at 810–11 (holding that evidence of defendant's membership in a gang did not violate Rule 403 because it was crucial to show motive for the crime). We overrule appellant's second issue.

## III. Appellant did not establish that he received ineffective assistance of counsel.

In his final three issues on appeal, appellant contends he was denied effective assistance of counsel during his second trial. Because the record on appeal does not establish that appellant's trial counsel was ineffective, we disagree.

## A.    Standard of review

In reviewing claims of ineffective assistance of counsel, we apply a two-prong test. *See Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To establish ineffective assistance of counsel, an appellant must prove by a preponderance of the evidence that (1) his trial counsel's representation was deficient in that it fell below the standard of prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Id.*

An accused is entitled to reasonably effective assistance of counsel. *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983); *Bradley v. State*, 359 S.W.3d 912, 916 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). Reasonably effective assistance does not mean error-free representation, however. *Ex parte Felton*, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991). Isolated errors of omission or commission do not render counsel's performance ineffective, nor can ineffective assistance of counsel be established by isolating one portion of trial counsel's performance for examination. *Wert v. State*, 383 S.W.3d 747, 753 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Therefore, when evaluating a claim of ineffective assistance, the appellate court looks to the totality of the representation and the particular circumstances of the case without the benefit of hindsight. *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

There is a strong presumption that trial counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy. *Salinas*, 163 S.W.3d at 740. It is not sufficient that an appellant show, with the benefit of

hindsight, that his counsel's actions or omissions during trial were merely of questionable competence. *Lopez*, 343 S.W.3d at 143. Instead, in order for an appellate court to find that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record and the court must not engage in retrospective speculation. *Id.* at 142. When such direct evidence is not available, we will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined. *Id.* at 143.

Trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective. *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012). Absent specific explanations for counsel's decisions, a record on direct appeal will rarely contain sufficient information to evaluate an ineffective assistance claim. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). The Court of Criminal Appeals has stated that it is a rare case in which trial counsel's ineffectiveness is apparent from the record and an appellate court may address and dispose of the claim on direct appeal. *Lopez*, 343 S.W.3d at 143. The court declared that it is a "difficult hurdle to overcome: the record must demonstrate that counsel's performance fell below an objective standard of reasonableness as a matter of law, and that no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning." *Id.* In other words, when trial counsel has not had an opportunity to explain his or her actions or inactions, an appellate court cannot find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

If a criminal defendant proves his trial counsel's performance was deficient, he also must prove he was prejudiced by counsel's actions. *Thompson*, 9 S.W.3d

15

at 812. This requires the defendant to demonstrate a reasonable probability that the result of the proceeding would have been different if trial counsel had acted professionally. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Malett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Cox v. State*, 389 S.W.3d 817, 819 (Tex. Crim. App. 2012).

Appellant contends his trial counsel was ineffective for five reasons, each of which we examine below. Because appellant did not file a motion for new trial, his trial counsel was not afforded an opportunity to explain his decisions or trial strategy relating to each of appellant's allegations. Accordingly, appellant must prove that his counsel's performance was deficient by showing that no reasonable trial strategy could have justified counsel's acts or omissions, and must also prove that he suffered prejudice.

## B. Appellant has not established that he was prejudiced by his trial counsel's failure to obtain a copy of the transcript from his first murder trial.

In his third issue, appellant contends his trial counsel was ineffective because his failure to obtain a transcript from appellant's first trial (which counsel also tried) left him inadequately prepared for appellant's second trial. The State responds that appellant has not demonstrated that he was prejudiced by his counsel's failure to obtain a transcript of the first trial. We agree with the State.

Appellant has not explained how he was prejudiced. Although he contends that his trial counsel missed critical opportunities for impeachment, failed to call a single defense witness, and failed to "cross-examine" any jurors from the venire panel, even if those accusations are true, he does not address how the result of his

16

second trial would have been different if those deficiencies had been avoided.[2] Because appellant has not met the second prong of the *Strickland* test, we overrule his third issue on appeal. *See Ladd v. State*, 3 S.W.3d 547, 570 (Tex. Crim. App. 1999) (failure to establish prejudice prong of the *Strickland* test precludes any relief).

### C. Appellant has not established that his trial counsel performed deficiently by failing to object to testimony regarding an unadjudicated extraneous offense.

In his fourth issue, appellant contends his trial counsel's performance was deficient because he did not object to testimony regarding a stolen Glock handgun. During appellant's trial, Christopher Lewis testified that he had known appellant since high school. Lewis also testified that his handgun disappeared during a gathering of friends at his residence. Lewis then testified, without objection, that he reported the missing handgun to the police and also told the police that appellant was one of the two people he suspected might have taken the gun. Expert testimony during appellant's trial revealed that the shooter could have used a Glock handgun.

According to appellant, this evidence was inadmissible because it concerned an unadjudicated extraneous offense. Appellant then argues that his trial counsel's failure to object to Lewis's testimony constitutes ineffective assistance of counsel. In response, the State asserts appellant has not met his burden on appeal to overcome the presumption that the failure to object to this evidence might have

---

[2] We note that, in making this argument, appellant has not (1) pointed out which specific impeachment opportunities were missed and how the first trial transcript would have enabled his trial counsel to effectively impeach any of the State's witnesses; (2) identified any defense witnesses who were called to testify in the first trial and who were not and should have been called to testify during appellant's second trial; or (3) identified which potential jurors should have been questioned and how the first trial transcript would have made such questioning more effective.

been the result of a legitimate trial strategy. We agree with the State.

As mentioned above, for an appellate court to hold trial counsel's performance deficient, the record must affirmatively demonstrate the deficiency. *Lopez*, 343 S.W.3d at 143. In addition, trial counsel should ordinarily have a chance to explain his or her actions before being held ineffective. *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). In this case, the record is silent on trial counsel's reasoning for not objecting to Lewis's testimony regarding his stolen handgun. Accordingly, we may not hold his trial counsel's performance deficient unless his failure to object was so outrageous that no competent attorney would have failed to lodge the objection. *Lopez*, 343 S.W.3d at 143; *Goodspeed*, 187 S.W.3d at 392.

We conclude that is not the case here. Appellant's trial counsel announced during his opening statement that appellant did not contest he was the person who fired the shots that killed Gilbert Cruz and Hector Sepulveda. Instead, appellant pursued a defense that he fired the shots to defend himself and his girlfriend against an imminent drive-by assault by four men in a vehicle. The decision not to object to Lewis's testimony about how appellant may have acquired the gun could have been formed as part of that trial strategy. *See McKinney v. State*, 76 S.W.3d 463, 473 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (stating that attorney may decide not to object to inadmissible evidence for strategic reasons); *Young v. State*, 10 S.W.3d 705, 712–13 (Tex. App.—Texarkana 1999, pet. ref'd) (stating it can be sound trial strategy for trial counsel not to object to leading questions when the evidence will likely come in anyway); *Henderson v. State*, 704 S.W2d 536, 538 (Tex. App.—Houston [14th Dist.] 1986, pet. ref'd) (stating that the failure to object to every introduction of improper evidence or questioning does not indicate that an appellant's representation was ineffective because not objecting can be a trial

18

strategy).  Because appellant has not established that his trial counsel's failure to object was so outrageous that no competent attorney would have done so, we overrule his fourth issue on appeal.  *See Ortiz v. State*, 93 S.W.3d 79, 88–89 (Tex. Crim. App. 2002) ("If counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal."); *Johnson v. State*, 176 S.W.3d 74, 79 (Tex. App.—Houston [1st Dist.]  2004, pet. ref'd) (stating that simply because a trial strategy does not work does not mean that trial counsel was ineffective); *Marlow v. State*, 886 S.W.2d 314, 317 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (holding that trial counsel's decision to pursue self-defense as the only defensive strategy when other defenses were also available was within his prerogative as a matter of trial strategy).  We overrule appellant's fourth issue.

### D.  Appellant has not established that his trial counsel's performance was deficient for any of the reasons raised in his fifth issue.

In his fifth issue on appeal, appellant contends his trial counsel's performance was deficient for three separate reasons.  First, he argues counsel was ineffective because he did not object to alleged hearsay testimony by Officer Garza.  Next, appellant complains that counsel was ineffective because he did not use any peremptory strikes on potential jurors.  Finally, appellant asserts counsel was ineffective because he did not call any witnesses for the defense.  We address each contention in turn.

Appellant's first argument concerns counsel's failure to make a hearsay objection to Officer Garza's testimony (1) detailing a statement by the gravely wounded Henry Sepulveda that the shooter yelled "BGB" as he approached the Tahoe; and (2) stating that, as a Houston police officer, he understood "BGB" was

19

a gang.  Assuming without deciding that Officer Garza's testimony constitutes objectionable hearsay, we conclude appellant has not overcome the presumption that counsel's decision not to object was part of a legitimate trial strategy.  *See Lopez*, 343 S.W.3d at 143–44 (concluding counsel was not ineffective for failing to object to hearsay because record was silent regarding counsel's strategy); *Wart v. State*, 383 S.W.3d 747, 757–58 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (holding that because record was silent as to counsel's reasons for not objecting to hearsay testimony, defendant failed to rebut the presumption that counsel's actions might be part of sound trial strategy); *Gamble v. State*, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.) (concluding, on silent record, that trial counsel's failure to object to inadmissible hearsay and opinion testimony was not ineffective assistance of counsel); *Thomas v. State*, 886 S.W.2d 388, 392 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (stating that failure to object to inadmissible testimony can constitute a sound and plausible trial strategy).

Appellant next contends his trial counsel was ineffective because he failed to exercise any peremptory strikes on potential jurors.  We conclude appellant has not established deficient performance on this basis because the record shows that his counsel exercised ten peremptory strikes.

Finally, appellant contends his trial counsel was ineffective because he did not call any witnesses for the defense.  The decision whether to call a particular witness, or to call any witnesses at all, is a matter of trial strategy.  *Weisinger v. State*, 775 S.W.2d 424, 427 (Tex. App.—Houston [14th Dist.] 1989, pet. ref'd). Appellant has not pointed out which witnesses his trial counsel should have called to testify, their availability to testify, or what their expected testimony would have been.  *See Ex parte White*, 160 S.W.3d 46, 52 (Tex. Crim. App. 2004); *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983) ("Counsel's failure to call

20

witnesses at the guilt-innocence and punishment stages is irrelevant absent a showing that such witnesses were available and appellant would benefit from their testimony."). Accordingly, we hold he has not met his burden to demonstrate by a preponderance of the evidence that his counsel was ineffective when he decided to not call any defense witnesses. *Nwosoucha v.State*, 325 S.W.3d 816, 830 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

Having addressed and rejected each argument raised within his fifth issue, we overrule appellant's fifth issue on appeal.

## CONCLUSION

The trial court's judgment is affirmed.


/s/    J. Brett Busby
        Justice

Panel consists of Justices McCally, Busby, and Brown.

Do Not Publish — TEX. R. APP. P. 47.2(b).